IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL NO. 1:18-cv-00117-MR-WCM

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | O R D E R |
| | ) | |
| 129 RESERVOIR RIDGE DRIVE | ) | |
| CULLOWHEE, NORTH CAROLINA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Government's Motion for Summary Judgment [Doc. 36].

## I.    BACKGROUND[1]

Mark Loren Miller (the "Claimant") owns a residence located at 129 Reservoir Ridge, Cullowhee, North Carolina (the "Defendant Property"). [Doc. 1 at ¶ 7; Doc. 25 at ¶ 7].  The Defendant Property is adjacent to the campus of Western Carolina University. [Id. at ¶ 8].

In 2017, the Jackson County Sheriff's Office, Western Carolina University, and the Bureau of Alcohol, Tobacco, Firearms, and Explosives

_____

[1] This summary of facts is presented for the analysis of the Government's motion for summary judgment, so the forecasts of evidence are viewed in the light most favorable to the Claimant.  Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

conducted a joint investigation regarding the sale and distribution of illegal drugs near Western Carolina University. [Doc. 37-1 at ¶ 2]. Law enforcement conducted surveillance of the Defendant Property from November 2017 until March 2018. [Doc. 37-1 at ¶ 6]. During that time, law enforcement conducted three controlled purchases of illegal drugs from the Claimant at the Defendant Property. [Id. at ¶ 8]. On November 16, 2017, the Claimant sold two ounces of marijuana for $450 to a confidential source at the Defendant Property. [Doc. 1 at ¶¶ 20, 22; Doc. 25 at ¶¶ 20, 22]. On November 21, 2017, the Claimant sold approximately 100 "hits" of LSD for $350 to a confidential source at the Defendant Property. [Doc. 1 at ¶¶ 27-29; Doc. 25 at ¶¶ 27-29]. On December 6, 2017, the Claimant sold one pound of marijuana to two confidential sources at the Defendant Property. [Doc. 1 at ¶¶ 41-49; Doc. 25 at ¶¶ 41-49].

On May 1, 2018, law enforcement executed a search warrant at the Defendant Property and arrested the Claimant. [Doc. 37-1 at ¶¶ 10-11]. During the search, law enforcement seized numerous items, including drug paraphilia, firearms, vacuum seal bags, digital scales, and baggies containing substances that were later confirmed to be marijuana and MDMA. [Id. at ¶ 10]. In addition, law enforcement seized approximately $14,300 in

U.S. Currency, which was later forfeited in an uncontested administrative forfeiture.  [Id.].

On May 1, 2018, the Government filed this action seeking forfeiture of the Defendant Property under 21 U.S.C. § 881(a)(7).  [Doc. 1].  On June 8, 2018, the Claimant filed a claim asserting that he is the owner of the Defendant Property.  [Doc. 8].  On August 10, 2018, the Court stayed this matter pending resolution of the Claimant's state criminal case.  [Doc. 16].

On June 26, 2019, the Claimant pleaded guilty in Jackson County Superior Court to two counts of maintaining a dwelling used for the keeping or selling of controlled substances within 1,000 feet of a school zone, five counts of selling a controlled substance within 1,000 feet of a school zone, one count of conspiracy to sell/deliver a  controlled substance, and one count of selling a Schedule VI controlled substance.  [Doc. 37-4].  The Claimant was sentenced to a term of 23 to 40 months incarceration.  [Id.].  The Claimant later forfeited $80,000 in cash and vehicles worth $25,000 in state forfeiture proceedings.  [Doc. 39-1 at ¶ 12].

On August 5, 2019, the Court lifted the stay in this matter.  [Text-Only Order entered Aug. 5, 2019].  On May 11, 2020, the Government filed a Motion for Summary Judgment.  [Doc. 36].  On June 5, 2020, the Claimant

responded.  [Doc. 39].  On June 12, 2020, the Government replied.  [Doc. 40].

## II.    STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A "genuine dispute" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "As the Supreme Court has observed, 'this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.'"  Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 519 (4th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)) (emphasis in original).

A genuine issue of fact exists if a reasonable jury considering the evidence could return a verdict for the nonmoving party.  Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994).  "Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of

material fact." Bouchat, 346 F.3d at 522. If this showing is made, the burden then shifts to the nonmoving party who must convince the Court that a triable issue does exist. Id. In considering the facts on a motion for summary judgment, the Court will view the pleadings and material presented in the light most favorable to the nonmoving party and must draw all reasonable inferences in the nonmoving party's favor. Matsushita, 475 U.S. at 587-88; Adams v. Trustees of the Univ. of N.C.-Wilmington, 640 F.3d 550, 556 (4th Cir. 2011).

## III. DISCUSSION

In a civil forfeiture case, the Government bears the initial burden of establishing by a preponderance of the evidence that the subject property is subject to forfeiture. 18 U.S.C. § 983(c)(1); United States v. Sims, 578 F. App'x 218, 219 (4th Cir. 2014). Pursuant to 21 U.S.C. § 881(a)(7), the Government may seek forfeiture of real property that was "used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation" of the Controlled Substances Act. While § 881(a)(7) refers to property used in violation of federal law, conduct that could support federal charges is sufficient to make real property forfeitable under § 881(a)(7) even if no federal charges were ever filed. United States v. One Parcel of Real Estate Located at 7715 Betsy Bruce Lane Summerfield, N.C., 906 F.2d 110,

111 (4th Cir. 1990) ("In civil forfeiture cases, property is subject to forfeiture 'even if its owner is acquitted of—or never called to defend against—criminal charges.'") (quoting United States v. Property Identified as 3120 Banneker Dr., N.E., Washington, D.C., 691 F. Supp. 497, 499 (D.D.C. 1988)).

To establish that real property "facilitated" an illegal drug transaction, the Government must show that "there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3); see also United States v. 1585 Amherst Road, No. 1:14-cv-136-MR-DLH, 2016 WL 815298, at *3 (W.D.N.C. Feb. 29, 2016) (Reidinger, J.). "Once the government has made this showing, the burden shifts to the claimant to prove by a preponderance of the evidence 'that the factual predicates for forfeiture have not been met.'" One Parcel of Real Estate Located at 7715 Betsy Bruce Lane Summerfield, N.C., 906 F.2d at 111 (quoting United States v. Banco Cafetero Panama, 797 F.2d 1154, 1160 (2d Cir. 1986)). "The claimant may meet this burden either by rebutting the government's evidence or by showing that the claimant is an innocent owner." United States v. Cleckler, 270 F.3d 1331, 1334 (11th Cir. 2001); 18 U.S.C. § 983(d).

In the present case, the Government's forecast of evidence shows that the Defendant Property was the site of multiple illegal drug transactions. [Doc. 1 at 3-6; Doc. 25 at ¶¶ 20, 22, 27-29, 41-49]. The Claimant does not

6

dispute that he engaged in the drug sales or that the Defendant Property was used to facilitate the commission of drug sales or that there was a substantial connection between the property and the offense.  [Doc. 39 at 1].  In fact, the Claimant pleaded guilty in state court to maintaining the Defendant Property for the keeping or selling of controlled substances.  [Doc. 37-4].  Based upon this undisputed forecast of evidence, the Court concludes that the Government has demonstrated that there is no genuine issue as to any material fact that the Defendant property was used to facilitate the commission of illegal drug transactions and is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(7).

The Claimant, however, argues that the forfeiture of the Defendant Property would violate the Excessive Fines Clause of the Constitution. [Doc. 39 at 7].  The Supreme Court has held that a civil *in rem* forfeiture violates the Excessive Fines Clause of the Eighth Amendment when it is "grossly disproportional to the gravity of a defendant's offense."  United States v. Bajakajian, 524 U.S. 321, 334 (1998); Austin v. United States, 509 U.S. 602, 614 (1993).  "'[T]here is a strong presumption of constitutionality where the value of a forfeiture falls within the fine range prescribed by Congress or the Guidelines.'"  United States v. $134,750 in U.S. Currency, 535 F. App'x 232,

240 (4th Cir. 2013) (quoting <u>United States v. Malewicka</u>, 664 F.3d 1099, 1106 (7th Cir. 2011)).

The Claimant argues that the Defendant Property has a value between $162,575 and $326,391, which he asserts is several times greater than that maximum fine. [Doc. 39 at 10]. The Claimant's evidence of value consists of two sources. First, the Claimant submits evidence showing that the assessed tax value is $130,060. [Doc. 39-1 at 5]. According to the Claimant, the assessed tax value of a home represents approximately 80% of its value, which means that the Defendant Property is worth $162,575. [Doc. 39 at 9]. Second, the Claimant submits evidence from a commercial website that estimates that the Defendant Property is worth between $175,749 and $326,391. [Doc. 39-1 at 6]. The Defendant Property, however, is subject to a mortgage in the amount of $133,291.84, [Doc. 40-1], and the owner's equity in the property must be accounted for when determining the amount of a forfeiture. <u>United States v. Hull</u>, 606 F.3d 524, 530 (8th Cir. 2010). Therefore, taking the evidence in the light most favorable to the Claimant as

8

the non-moving party, the value of the Claimant's equity in the Defendant Property is up to $193,099.16.[2]

Based on this evidence of value, the claimant argues that the presumption of constitutionality of the forfeiture does not apply in this case because the Defendant Property is worth more than the fine range laid out in the Sentencing Guidelines for the potential charges. [Doc. 39 at 9]. Specifically, the Claimant asserts that "the Sentencing Guidelines for selling less than 1 kilogram of marijuana provide for a maximum fine of $9,500" and that "[t]he Guidelines for selling less than 100 mg of LSD call for a maximum fine of $55,000."[3] [Id. (citing U.S.S.G. § 5E.1.2)].

---

[2] This conclusion gives the Claimant an enormous benefit of the doubt. A non-moving party has a burden of responding to a Motion for Summary Judgment with a forecast of admissible evidence. See Williams v. Staples, Inc., 372 F.3d 662, 667 (4th Cir. 2004) (explaining that only admissible evidence may be considered in resolving motion for summary judgment). The Claimant presents nothing but pure conjecture that the value of the subject property is 125% of the assessed value (i.e. that the assessed value is 80% of the fair market value). As for the range of values that the Claimant obtained from the internet, he presents no foundation for the admission of this information. "I found it on the internet" is not a substitute for an evidentiary foundation. The failure of the Claimant's evidence, standing alone, is a sufficient basis for finding his forecast of evidence insufficient to resist the Government's Motion for Summary Judgment.

[3] There is no evidence in the record as to the quantity of LSD sold, other than that it was 100 "hits" (dosage units). [Doc. 1 at ¶¶ 27-29]. Using the conversion formula of U.S.S.G. § 2D1.1(c)n.(G) yields a presumed quantity of less than 100 mg. Considering all of the drugs for which the Claimant was responsible would likewise yield a high end of the fine range per the Guidelines of $55,000.

9

The presumption of constitutionality, however, arises not only from the Guidelines but also from the statutory range of fines set by Congress.[4] $134,750 in U.S. Currency, 535 F. App'x at 240 (quoting Malewicka, 664 F.3d at 1106). The statutory range of fines for these crimes is much higher than the Guideline Range. A person convicted of distributing "less than 50 kilograms of marihuana . . . [shall] be sentenced to a term of imprisonment of not more than 5 years [and] a fine not to exceed . . . $250,000[.]" 21 U.S.C. § 841(b)(1)(D). A person convicted of distributing less than a gram of LSD "shall be sentenced to a term of imprisonment of not more than 20 years and . . . a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18 or $1,000,000 if the defendant is an individual[.]" Id. at § 841(b)(1)(C); see also 21 U.S.C. § 812(c)(9). In cases where the maximum fine is greater than $500,000, "the maximum fine limitations of the Guidelines do not apply to temper this legislative judgment." $134,750 U.S. Currency, 535 F. App'x at 241 (citing U.S.S.G § 5E1.2(a)(4); United States v. $79,650.00 Seized from Bank of Am., 650 F.3d 381, 387-88 (4th Cir. 2011). As such, the Claimant would have been subject to a maximum fine of $1,000,000 for the LSD sales alone.

---

[4] After all, if constitutionality were governed by the Guidelines, any upward departure would be unconstitutional, notwithstanding Congress's contrary legislation.

Because the value of the Defendant Property is less than that maximum fine, the forfeiture of the Defendant Property has a "strong presumption of constitutionality. . . ." $134,750 U.S. Currency, 535 F. App'x at 240 (quoting Malewicka, 664 F.3d at 1106).

Nevertheless, the Court's analysis is not finished simply because the forfeiture falls within the fine range prescribed by Congress and the Guidelines. That fact merely establishes a *presumption* of constitutionality. Especially when dealing with a drastic remedy like the forfeiture of a home, the Court must ensure that the forfeiture is constitutionally permissible by applying the following factors: "the nature and extent of illegal activity and whether the defendant fit into the class of persons for whom the statute was principally designed; the maximum penalties that a court could have imposed for the offense; and the harm caused by the offense." $134,750 U.S. Currency, 535 F. App'x at 239 (citing Bajakajian, 524 U.S. at 337-94). The burden is on the party challenging the constitutionality of the forfeiture to demonstrate that it is grossly disproportional. United States v. Ahmad, 213 F.3d 805, 816 (4th Cir. 2000); see also 18 U.S.C. § 983(g). Because the forfeiture here bears the presumption of constitutionality, the Claimant must "clear a significantly higher hurdle to show that the requested forfeiture is

grossly disproportional to the gravity of its offense." <u>United States v. Jalaram, Inc.</u>, 599 F.3d 347, 356 (4th Cir. 2010).

The Court begins its analysis of the proportionality of the forfeiture by examining the nature and extent of the illegal activity and whether the Claimant falls within the class of persons for whom the statute was designed. The Claimant has admitted to selling marijuana and LSD in multiple transactions over the course of roughly five months. [Doc. 37-4].[5] The Claimant bears particular culpability for those sales because he personally was the seller, not just an acquiescent owner. The Plaintiff, however, also allowed other individuals to sell drugs at the Defendant Property. [Doc. 37-2]. As such, the nature and extent of the Claimant's personal illegal activity was significant in the range of actions that would form a violation of the law.

Closely related to the nature and extent of the Claimant's personal illegal activities is the factor of the harm caused by the offense. With regard to this factor, the Supreme Court has recognized the serious threat to individuals and society posed by drug offenses in the context of an Eighth Amendment analysis. <u>See</u> <u>Harmelin v. Michigan</u>, 501 U.S. 957 (1991)

---

[5] The Claimant asserts that if he only sold marijuana, he could argue that the changing views regarding marijuana in our society would make the fine grossly disproportionate to the nature and extent of the illegal activity. The Claimant, however, also sold LSD, which is a much more dangerous drug and therefore a much more serious offense.

(upholding mandatory life sentence for possession of 672 grams of cocaine); see also National Treasury Employees Union v. Von Raab, 489 U.S. 656, 668 (1989) (stating that drug use and distribution constitute one of "greatest problems affecting the health and welfare of our population."). While the Claimant argues that his criminal activity involved relatively negligible quantities of drugs, his activity perpetuated the societal harms recognized by the Supreme Court. More importantly, however, the harm caused by the Claimant's criminal activity is compounded by the fact that those actions occurred near a school. United States v. Campbell, 935 F.2d 39, 45 (4th Cir. 1991) ("Congress has seen fit to enhance the penalty for illicit narcotics activity in school zones."). Several Circuits have acknowledged "the danger that the mere presence of drugs near a school presents[.]" United States v. Ortiz, 146 F.3d 25, 29 (1st Cir. 1998); see also United States v. Rodriguez, 961 F.2d 1089, 1092 (3d Cir. 1992); United States v. Harris, 313 F.3d 1228, 1240 (10th Cir. 2002). As such, the Claimant's criminal activity here caused comparatively more harm than that found in a typical drug distribution case. Accordingly, this factor, taken with the nature and extent of the Claimant's personal involvement, do little to rebut the presumption of constitutionality arising from the statutory fine range.

13

This forfeiture is also consistent with those that have been approved in other similar cases. For example, another court has concluded that forfeiture of real property valued at roughly $125,000 was not grossly disproportionate where the claimant could have faced a $1,000,000 fine. United States v. One Parcel of Prop. Located at 35 Ruth St., Unit 30 Bristol, Connecticut, No. CIV.3:06CV1844(MRK), 2008 WL 4005299, at *3 (D. Conn. Aug. 25, 2008) (citing 21 U.S.C. § 841(b)(1)(C)). Likewise, another court has upheld a forfeiture of real property valued at $68,000 because the Claimant could have been fined roughly $100,000 for selling $250 worth of cocaine. United States v. Certain Real Prop. & Premises Known as 38 Whalers Cove Drive, Babylon, N.Y., 954 F.2d 29, 34 (2d Cir. 1992).

Although the Claimant argues that the property he forfeited in state proceedings should be included when assessing the proportionality of the federal forfeiture, [Doc. 39 at 10], a federal court "do[es] not mix state-imposed sanction with federal sanctions" when evaluating the proportionality of a federal forfeiture. United States v. 829 Calle de Madero, 100 F.3d 734, 739 (10th Cir. 1996). After all, the state and federal governments represent separate sovereigns that have the authority to impose their own separate penalties for criminal activity in their respective jurisdictions. See Gamble v. United States, 139 S. Ct. 1960, 1964, 204 L. Ed. 2d 322 (2019). As such,

the state proceedings against the Claimant do not affect the Court's analysis here.

In sum, the Claimant has not cleared "the significantly higher hurdle" necessary to show that the forfeiture of the Defendant Property is grossly disproportionate considering the violations committed.[6]  This is particularly true considering the weakness of the Claimant's forecast regarding the subject property's value.  After all, the one fact the Claimant presents is the assessed tax value, which is less than the mortgage lien against the property.  As such, the forfeiture of the Defendant Property does not violate the Eighth Amendment.   Because the Government has presented an undisputed forecast of evidence showing that illegal drug transactions occurred at the Defendant Property and that there is a substantial connection between those offenses and that property, its Motion for Summary Judgment [Doc. 36] will be granted.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Government's Motion for Summary Judgment [Doc. 36] is **GRANTED**.

---

[6] The Court notes its serious concerns about allowing the forfeiture of considerable equity in a person's home based on the size of a fine that *could* be imposed on whatever federal charges *could* be brought in the future.  The facts of this case, however, do not present the Court with this issue.

15

**IT IS FURTHER ORDERED** that Mark Loren Miller's interest in the real property located at 129 Reservoir Ridge Drive, Cullowhee, North Carolina as described in Book 1898, Pages 775-777 in the Register of Deeds for Jackson County, North Carolina is **FORFEITED** to the United States of America.

**IT IS SO ORDERED.**

Signed: September 16, 2020

Martin Reidinger
Chief United States District Judge